Mtt,t,atu> L. Midonick, J.
The sole object of this opinion is to expose again, and to persuade the Legislature to rectify, the miserable state of the law in respect to the requirement for corroboration in cases of sexual assault.
*245 On June 24, 1971, at about 1:00 p.m. the complainant, an attractive fashion model, aged 19, was crossing through Morning-side Park, on her way to a street corner modelling engagement at 116th Street and Broadway, when she was attacked by three juveniles. The boys, the two before me being about six feet tall, threatened the young woman with a knife and a razor causing her to fear for both her life, and her future as a model if she should be disfigured in any way. The attackers searched through her belongings, taking her money and her wristwatch. While the third boy acted as lookout, the other two, aged 15 each, removed the victim’s clothing. The lookout has not been found, but the other two were before the court, and their trials were severed from that of the absent lookout. One youth, now before the court, attempted to rape the prosecutrix on the park stairway, while the other simultaneously forced her to perform an act of oral sodomy. The lookout, upon hearing approaching footsteps, ended 10 minutes of such horrendous imposition upon the defenseless victim. All three boys fled. In a moment, a woman found the hysterical complainant, unclothed, with dirt and twigs about her thighs. After helping to clothe the victim, both women left the park and called the police. After a quick, fruitless search of the vicinity, the police took the young model to St. Luke’s Hospital. There, an examining physician corroborated (and so testified at the trial) that a male had recently ejaculated near the entrance of the victim’s vagina. No sperm were found within the vagina. For obvious reasons explained by the victim, no sperm remained in her mouth by the time a doctor was available with his microscope. While the victim was with the police and while she was in the hospital, she was patently agitated and shed tears from time to time. She made immediate complaint to the police and doctor, such being a necessary but not a sufficient condition for proving rape or attempted rape in New York — not sufficient because of Victorian rules requiring, in addition to immediate outcry, corroboration of each of three elements of rape. A few days later, the victim identified two of the boys who had attacked her, selecting them from a police identification lineup containing four teen-age youths of similar height, age, color and build. Neither the weapons used by the assailants nor the items stolen from the complainant were found or offered in evidence. The two juveniles (the third juvenile who was the look-out, has not been caught) were charged with robbery, sodomy, and attempted forcible rape. (Penal Law, §§ 160.15, 130.50,110.10,130.35.)
I find as facts that the alleged attempted forcible rape and forcible oral sodomy were proven beyond a reasonable doubt. *246 The out-of-court identification was in no way tainted under the Wade, Gilbert and Stovall doctrines. But as a matter of law, the Penal Law (§ 130.15) requires that there be corroboration of the testimony of the victim of any sexual offense, or attempted sexual offense, defined in article 130, with the exception of sexual abuse in the third degree.[1] In Matter of Erie R. (34 A D 2d 402 [2d Dept., 1970]) the Appellate Division held that the corroboration requirement was applicable to juvenile proceedings. Such “ -corroboration must extend to every material fact essential to constitute the crime.” (People v. Page, 162 N. Y. 272, 274-275 [1900].)
The material elements that must be proven and corroborated by the prosecution or presentation are three: (1) the sexual penetration (except for attempts, assaults with intent to commit sexual offenses, and impairment of the morals of a minor, which require proof of sexual activity, or intent to commit same, rather than penetration), (2) the use of force or lack of consent, and (3) the identification of the assailant.[2] The testimony of the doctor who examined the prosecutrix at St. Lukes, establishing the presence of live sperm at the entrance to the vagina, serves to corroborate the proposition that some male attempted to have sexual relations with the woman, within six hours before the medical examination. The agitated and distraught emotional condition of the complainant, as well as the filthy condition in which she was discovered and examined, corroborated that the acts performed upon her were against her will. But there is no sufficient corroboration of the charge of oral sodomy (no sperm found in, nor observable injuries to, her mouth), nor is there corroboration of the identification of the assailants. This even though all elements of all allegations were proved ‘ ‘ beyond a reasonable doubt ’ ’!
Judge BKeitel, concurring in People v. Radunovic (21 N Y 2d 186, 191 [1967]), summed up the anomalous condition of the law: “It is an immature jurisprudence that places reliance on corroboration, however unreliable the corroboration itself is, and *247 rejects overwhelming reliable proof because it lacks corroboration, however slight and however technical even to the point of token satisfaction of the rule.” Justice Steuee, dissenting in the Appellate Division decision in People v. Radunovic (27 A D 2d 916, 917 [1st Dept., 1967]), was gravely troubled by the same over-proof requirement of corroboration. “ The result which precedent dictates is almost absurdly anomalous * * * Corroboration must be had of the testimony of the victim. * * * This makes either a confession or an eyewitness indispensable. It cannot be contradicted that such crimes are hardly ever committed in the presence of witnesses. Nor can it he denied that the incidence of such attacks, from whatever cause, is steadily and noticeably increasing, at least in urban areas. To adhere to rules which can only tend to aggravate this situation is intolerable.” Justice Steuee saw one possible solution in new legislation overruling the rule requiring corroboration. He made this suggestion after the Penal Law (§ 130.15) had been passed, but before it went into effect. The new Penal Law served to extend the problems caused by the corroboration requirement to a larger group of sexual offenses. This is understandable only from the point of view of ‘ ‘ consistency ’ ’: having wrongly required corroboration for rape, why of course logic demanded extending the fatal flaw to sodomy, incest, and all the rest of Pandora’s sex offenses, except the essentially nonsexual annoyance known as sexual abuse in the third degree.[3] If, even more logically, the Legislature comes to the rescue of all females, by eliminating all need for corroboration as long as sex offenses are proved beyond a reasonable doubt, Gilbert and Sullivan’s view will at long last prevail, and, in this significant area, the law will become “ the embodiment of everything that’s excellent.”
At common law, the testimony of the injured person, in the trial of all offenses against the chastity of women, was alone sufficient evidence to support a conviction. (7 Wigmore, Evidence, 3d ed., § 2061.) Today, in the absence of a statute requiring corroboration, it is generally held that the unsupported testimony of the prosecutrix, if not contradictory or incredible, or inherently improbable, may be sufficient to sustain a conviction of rape, or of attempted rape, or of assault with intent to commit rape; but where such testimony hears on its face indications of unreliability or improbability, and is contradicted by other evidence, it is insufficient to support a verdict without corroboration. (75 C.J.S., Rape, § 78; State v. Hilliard, 89 Ariz. 129; *248 People v. Nye, 38 Cal. 2d 34; People v. Perez, 412 Ill. 425; Day v. Commonwealth, 187 Va. 457.) But while the overwhelming majority of the States follow this beyond-a-reasonable-doubt standard, New York and Iowa add statutory corroboration requirements, leaving their courts no discretion. Of the two statutory rules, New York’s is far the more restrictive and damaging to the ends of law enforcement and justice.
The corroboration requirement is supposed to eliminate or make negligible the danger that innocent males will be convicted of any of the enumerated sexual offenses. Lawyers and psychologists have argued that sexual cases are particularly subject to the danger of false charges — resulting from sexual neurosis, fantasy, jealousy, spite, or simply a girl’s or woman’s refusal to admit she consented to an act of which she is now ashamed.
The latter was the theme of a haunting book by Harper Lee, ‘1 To Kill a Mockingbird ’ ’; there an obviously biased jury refused to believe strong evidence of innocence. In New York State, such a false verdict as 1 ‘ Mockingbird ’ ’ would be set aside by any presiding Trial Judge, and also by any Appellate Division, on the facts, on the clear showing of reasonable doubt, without reliance on lack of corroboration. Absent an obvious improbability, .such untrue charges are especially difficult to disprove. In rape cases, because false accusations are supposedly common, the presumption of innocence may be frequently justified; because reliable defense evidence is so difficult to acquire, the presumption will be essential to the accused; and because rape arouses such strong biases and emotions, the fact finder may tend to ignore the presumption. (67 Col. L. Rev. 1137,1139.)
But sexual assaults are not the only area of the law where serious charges can be made freely where the motivation for falsehood or occasion for inaccuracy is very great, and the disproof difficult. Judge Breitel, in People v. Radunovic (21 N Y 2d 186, 192 [1967]) focused upon fraud, prostitution, illegitimacy of birth and filiation proceedings, alleged gifts from the now-dead, and alleged gifts between those in confidential relations, as examples of situations that arouse similar concern. The principle controlling in those cases, which Judge Breitel felt could be equally applicable to sexual offenses, “ requires especially convincing and satisfying evidence, within the rubrics of proof beyond a reasonable doubt and the preponderance of evidence ”. (21 N Y 2d, at p. 192.) This is a much more flexible and just way to meet the emotional pitfalls of such prosecutions and proceedings. The psychiatrists and psychologists have their expertise, but, with respect to their learning, they cannot fairly *249 frame the standard of proof to require the arbitrary rules of corroboration. Charges to juries that they be especially careful because of these aspects perhaps; but arbitrary rules of thumb giving no leeway to fact-finding Judges and juries where the findings are beyond a reasonable doubt despite such tendentious issues, are folly.
The corroboration requirement denigrates the testimony of women who claim to have been victimized sexually. It evidences an irrational belief in the dishonesty of the woman who claims to have been sexually assaulted. When an individual is robbed or wounded, her (or his) testimony alone can be used to convict the assailant, without regard to whether the victim of the crime was a man or a woman. “ ‘ The fact is that, in the light of modern psychology, this technical rule of corroboration seems but a crude and childish measure, if it be relied upon as an adequate means for determining the credibility of the complaining witness in such charges. The problem of estimating the veracity of testimony of feminine testimony in complaints against masculine offenders is baffling enough to the experienced psychologist. This statutory rule is unf ortunate in that it tends to produce reliance upon a rule of thumb. ’ ” (Breitel, J., concurring in People v. Radunovic, 21 N Y 2d at pp. 191-192 [quoting 7 Wigmore, Evidence [3d ed.], § 2061, pp. 354 — 355].) So heavy a testimonial disability in every case is unwarranted. ‘ ‘ Beyond-a-reasonable doubt ’ ’ would provide sufficient safeguard for the defendant and a reliable .standard for the fact finder, in almost every case involving an alleged sexual assault.
It is noteworthy that the petitioning young woman here was not known to the respondents and had no reason to be spiteful to them, as she might have if they were her acquaintances. I would hope that the Court of Appeals, or more appropriately the Legislature, will make a distinction eliminating the need for corroboration in sex offenses where .strangers are charged, as distinguished from acquaintances, fiances or lovers — the latter being the only ones who may truly be in need of protection provided by corroboration. The Committee on Codes of the New York Assembly had before it (1971), a bill (Assem. Int. 6174) to amend section 130.15 of the Penal Law to read: ‘ ‘ § 130.15. Sex Offenses; Corroboration. A person shall not be convicted of an offense defined in this article,., or of an attempt to commit the same solely on the uncorroborated testimony of the alleged victim, if said person is an acquaintance of the alleged victim. This section shall not apply to the offense of sexual abuse in the third degree.”
*250 The New York Senate Committee on Codes held recent hearings in Manhattan on proposals to revise section 130.15. (N. Y. L. J., Oct. 28, 1971, p. 1, col. 7.)
Bronx District Attorney Burton B. Roberts, testifying for the State Association of District Attorneys, told the committee that the association intended to have legislation introduced which would call for the complete elimination of corroborating evidence in rape cases, or alternatively to require corroboration only in cases involving a minor’s charge.
With respect to the learned District Attorney, I see no point whatever to retaining the ‘ ‘ anti-truth ’ ’ requirement of corroboration merely because a “ minor ” makes the charge. The complainant in this case was a 19-year-old “ minor,” i.e., under the age of 21. Her testimony was as straightforward and clear and compelling as though she were 51. At age 12 and older, all testimony of females and males can be of sufficient weight, as far as age and presumptive ability to understand an oath is concerned. As long as the female allegedly defiled understands the meaning of an oath, her testimony should be weighed for beyond-a-reasonable-doubt reliability by the fact finder, not by arbitrary legislative rules of thumb. 'Compare Judge Bbeitel in People v. Radunovic (21 N Y 2d, at p. 190): “ Cases arising out of a sexual transaction or context involve a special peril of unreliable testimony on the part of the complainant whether child or adult, male or female.”
The Senate Committee on Codes also had before it (1971), a bill (Sen. Int. 2448-A) which proposes a different modification of Section 130.15.
“ § 180.15.
A person shall not be convicted of any offense defined in this article, or of an attempt to commit the same, solely on the uncorroborated testimony of the alleged victim; provided however that the identity of the defendant need not be corroborated ”.
This version would be a vast improvement; but why leave vestiges of a bad rule to undermine the truth?
The passage of Assem. Int. 6174, Sen. Int. 2448-A or, best, the proposal to eliminate corroboration entirely, would constitute a major improvement in this area of the law. If any of these laws had been in effect when the acts here complained of had occurred, the victim of this vicious and cruel crime, and society in general, would have received the protection to which they are entitled.
Due to section 130.15 of the Penal Law, as interpreted by the appellate courts of this State, the decision I must render is clear. On the law, though contrary to the facts, I must *251 dismiss the charges of attempted rape and oral sodomy simply because of the lack of technical corroboration of identification for sex offense purposes.
In People v. Moore (23 N Y 2d 565 [1969]) at pages 567-568, another case involving both a robbery and a serious sexual assault, the Court of Appeals said:
“ [T]he rule extending the requirement for corroboration in cases of rape to other crimes * * * has been directed in each case to crimes intrinsically related to rape or committed in aid of effecting rape.
‘ ‘ Robbery is not such a crime * * * if a woman is robbed while she is also raped, a testimonial disability ought not be added to a physical indignity. * * *
“ In People v. Radunovic (21 N Y 2d 186) and cases decided with it, assault charges were based on acts each interdependent upon the rape itself. Whatever rationality there may be in extending the need for corroboration for such assaults, it does not extend to the quite different crime of robbery unless we are willing to place women as witnesses in an unjustifiable position of disadvantage.”
On the facts and the law, I find both boys guilty of an act which, if they had not been juveniles, would amount to armed robbery, as alleged, beyond a reasonable doubt.

. Penal Law, “§ 130.15 Sex Offenses; Corroboration. — A person shall not be convicted of any offense defined in this article, or an attempt to commit the same, solely on the uncorroborated testimony of the alleged victim. This section shall not apply to the offense of sexual abuse in the third degree.” (Sexual abuse in the third degree is a minor crime, a Class B misdemeanor, and usually consists of acts such as pinching a woman; since such misconduct is supposed not to affect a man’s reputation seriously, corroboration is not unnecessarily superimposed upon proof beyond a reasonable doubt, as in all the more serious sexual offenses )

. 1 Mottla, New York Evidence, Proof of Cases (2d ed., 1966), § 799.

. Ploscowe, Sex Offenses in the New Penal Law, 32 Brooklyn Law Rev. 274, 275.